**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **BETTY JO HOBBS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | No. 5:15-cv-00215 |
| | : | |
| **CAROLYN W. COLVIN,** | : | **Social Security Appeal** |
| **Acting Commissioner of Social Security,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

## REPORT AND RECOMMENDATION

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff Betty Jo Hobbs' application for benefits. 42 U.S.C. § 405(g). Because substantial evidence supports the Commissioner's decision, it is **RECOMMENDED** that the Court **AFFIRM**.

## BACKGROUND

### A. Procedural Background

Plaintiff filed an application for a period of disability and disability insurance benefits in October 2011. Tr. 161-67, 168-70. The Commissioner denied Plaintiff's claims both initially and upon reconsideration. Tr. 66-75, 76-85, 86, 87, 88-97, 98-107, 108, 109, 110-15, 126-29, 122-25. Plaintiff then requested an administrative hearing. Tr. 130-31. Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. Tr. 30-65. Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and denying Plaintiff's claims for benefits. Tr. 10-29. Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. Tr. 1-7; 8-9. Plaintiff filed a timely complaint with this

Court. Doc. 1. The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

### B. Factual Background and the ALJ's Decision

Plaintiff, who was born on February 8, 1968, claimed disability beginning in January of 2010. Plaintiff has a high school education, and has prior work experiences as a cook, inspector, and quantity checker. Tr. 236; 20 C.F.R. § 404.1560(b)(1). Plaintiff alleged disability due to diabetes, high blood pressure, arthritis, and vision. Tr. 168-171.

In rendering the decision at hand, the ALJ concluded that Plaintiff had not performed substantial gainful activity since January 25, 2010, the alleged onset date. Tr. 16. After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: chronic obstructive pulmonary disease, hypertension, diabetes mellitus, diabetic retinopathy, left eye blindness, and obesity. Tr. 16. Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 17. The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform sedentary work, with the following exceptions and limitations: "she is limited to frequent climbing of ramps and stairs. The claimant is limited to frequent balancing, stooping, kneeling, crouching, and crawling. She may not climb ladders, ropes, and scaffolding. She is limited to tasks that do not require better than 20/50 corrected visual acuity. The claimant may perform no tasks requiring peripheral vision or stereoscopic vision. She must avoid even moderate exposure to workplace hazards and respiratory irritants." Tr. 28.

In formulating Plaintiff's RFC, the ALJ considered the entire medical record, as well as Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely credible. Tr. 19. The ALJ further found that Plaintiff was capable of performing past relevant work as a timekeeper and auditor. Tr. 22. Thus, the ALJ found Plaintiff not disabled. Tr. 23.

### C. Medical Record

The transcript in this case contains records detailing Plaintiff's impairments of arthritis, chronic obstructive pulmonary disease, hypertension, diabetes mellitus, diabetic retinopathy, left eye blindness, and obesity. The earliest record recounts Plaintiff's visit to Dr. Lyle Lastinger, an optometrist, for diabetic retinopathy on July 26, 2001, although one consulting physician noted that Plaintiff was diagnosed with diabetes in 1998. Tr. 348; 388. Plaintiff was seen regularly by Dr. Lastinger for diabetic retinopathy, until Plaintiff was referred to a specialist, Dr. Norman Nelson. on January 28, 2009. Tr. 349.

While Plaintiff was being treated by Dr. Lastinger for her vision problems, Dr. David Fieseler served as Plaintiff's primary care physician. Records from his office show that on November 21, 2005, Plaintiff presented with chest pains. Tr. 501-502. Dr. Fieseler prescribed Plaintiff medication, discussed anti-reflux measures, and instructed her to return in two weeks. Tr. 502. On December 16, 2005, Plaintiff presented to the emergency room with a burn on her left arm. Tr. 500. Treatment notes indicated that Plaintiff burned herself on a kettle at work. Tr. 500. At that time Plaintiff was an employee of the Upson Medical Center Nutritional Service. Tr. 500. Plaintiff was released the same day after treatment. *Id.* Plaintiff presented to Dr. Fieseler a

few days later on December 27, 2005, with complaints of pain in her side. Tr. 498. Dr. Fieseler diagnosed Plaintiff with diabetes mellitus, hypertension, gastroesophageal reflux, and musculoskeletal syndrome, following a physical examination. Tr. 498.

Less than three weeks later, on January 16, 2006, Plaintiff presented to the emergency room with pain and nausea associated with gallstones. Tr. 485; 495-497. No problems with her extremities were noted. Plaintiff was diagnosed with cholecystitis, congestive heart failure, and hypoxemia. Tr. 486. Plaintiff had surgery to remove her gallbladder and several gallstones the same day. Tr. 489. The surgeon noted that Plaintiff was "a morbidly obese diabetic female." Tr. 489.  A chest x-ray the following day revealed "no acute bony abnormalities." Tr. 491.

On February 6, 2006, Plaintiff visited the emergency room complaining of left shoulder pain and pain under her right breast. Tr. 484. According to a contemporaneously taken x-ray at Upson Regional Medical Center, PA and lateral views of the chest showed the heart to be within normal limits, with some streaky density in both lung bases thought to represent atelectasis. Tr. 483. Dr. John Warren Patrick recommended follow-up chest films to evaluate the lower lung fields and pleural spaces. Tr. 483.

The record reflects that Plaintiff's first complaint of arthritis occurred on February 16, 2006, when Plaintiff visited the emergency room for left hand pain and swelling. Tr. 482. The physician's final impression concluded that Plaintiff suffered from "gouty arthritis." Tr. 482. During 2007, Plaintiff was admitted to the emergency room for left knee pain and the physician believed Plaintiff to suffer from arthropathy in her left knee. Tr. 437. A year later, Plaintiff saw Dr. Fieseler on March 7, 2008, complaining of sinus pressure and congestion. Tr. 437. Plaintiff's medical history revealed a prior arthritis diagnosis. Tr. 435. Upon physical examination, Dr. Fieseler found bilateral tenderness in her hands, degenerative joint disease in her knees and trace

edema. Tr. 436.   Dr. Fieseler diagnosed Plaintiff with: (1) diabetes mellitus Type II; (2) hypertension; (3) gastroesophageal reflux; (4) congestive heart failure; (5) osteoarthritis; (6) anemia; and (7) sinusitis. Tr. 436.

On December 31, 2009, less than a month before the alleged disability onset date, Dr. Norman Nelson, Jr., evaluated Plaintiff for diabetic retinopathy. Tr. 346-347. The examination revealed a visual acuity of 20/25 in the right eye, and counting fingers at a distance of five feet away with her left eye. Tr. 346. Findings upon external examinations were consistent with diabetic retinopathy in each eye. Tr. 346.  Dr. Nelson recommended laser treatment of the right eye and medication for the left eye. Tr. 346-347. On March 29, 2010, Plaintiff underwent an injection of intraocular avastin into the left eye. Tr. 308. Plaintiff was referred to Dr. Nelson again on September 26, 2011, concerning her retinopathy. Tr. 350. When Dr. Lastinger evaluated Plaintiff in September 2011, he explained it was only a routine examination, and Plaintiff was referred back to Dr. Nelson for diabetic neuropathy. Tr. 646.

In March of 2010, an x-ray of Plaintiff's left knee was "unremarkable," with normal findings related to Plaintiff's bones, joints, and soft tissues. Tr. 357. Similar findings were also made for Plaintiff's right knee. Tr. 356.

On August 13, 2010, Plaintiff presented to the emergency room with complaints of breathing difficulties. Tr. 328; 359. Results from a chest x-ray were unremarkable. Tr. 334; 365. Plaintiff was discharged four hours later with instructions regarding hyperglycemia and she was referred to her primary care physician, Dr. Benjamin Williams, for follow-up. Tr. 331; 366. Plaintiff was given one unit of insulin before she left. Tr. 334; 366.

On the morning of July 16, 2011, Plaintiff presented to the emergency room with complaints of a painful and swollen foot that evolved over the previous night. Tr. 367. The

examiner believed Plaintiff to have joint pain and a swollen foot, and gave her an oral narcotic for her pain. Tr. 370. Plaintiff was told to see her primary care physician, and was referred to Dr. Williams. Tr. 370. Dr. Williams received a lab report from a urine screen on July 26, 2011. Tr. 342-343.

On October 27, 2011, Plaintiff presented to the emergency room with complaints of "swelling in left hip and knee due to arthritis." Tr. 371. Without imaging, Plaintiff was diagnosed with osteoarthritis and given an oral narcotic for her pain and anti-inflammatory medication to combat the swelling. Tr. 375. Plaintiff was again referred to Dr. Williams. Tr. 375.

In December of 2011, Plaintiff presented to the emergency room complaining of sharp pain in her left side and in her abdomen. Tr. 376. A CT scan of Plaintiff's abdomen and pelvis revealed no obstructive uropathy, and a nonobstructive stone involving the inferior pole of the left kidney. Tr. 383. Plaintiff was discharged with findings of flank pain, hematuria, and kidney stones, and was referred to Dr. Williams. Tr. 383-384.

 On April 12, 2012, Plaintiff presented to Dr. Williams with a chief complaint of arthritis. Tr. 386. Although Dr. Williams indicated that he reviewed prior office visits, no prior office visits are present in the transcript. Dr. Williams found Plaintiff to have normal functioning upon physical examination, and assessed Plaintiff with Type II diabetes, high blood pressure, right hip pain, and insomnia. Tr. 386.

Dr. Jerry W. Bush completed a disability assessment of Plaintiff on May 3, 2012. Tr. 388-395. Dr. Bush reviewed Plaintiff's treatment records and reported symptoms. Tr. 388.  He noted that Plaintiff did not use a hand held assistive device to ambulate.  Although Plaintiff alleged she was compliant with medication, she was found to have uncontrolled hypertension, with her blood pressure at 166/100 on that day. Tr. 388.  Plaintiff acknowledged she had diabetes

and diabetic retinopathy, which improved with injections; she was not insulin-dependent. Tr. 388. Testing showed that with corrective lenses, Plaintiff's vision significantly improved to 20/50 bilaterally. Plaintiff's breathing was found to be normal, her lungs clear, and her cardiac exam was normal. Tr. 390. In specific reference to Plaintiff's allegations of arthritis, Dr. Bush found no indication of swelling or warmth in Plaintiff's hands. Tr. 390. She had a full range of motion in all joints and normal muscle strength, but trace edema in her ankles bilaterally was noted. Tr. 390. Dr. Bush determined Plaintiff to have moderate impairment in prolonged standing, walking and heavy lifting. Concerns were also noted regarding repetitive bending, climbing, stooping, kneeling, squatting and crouching. Tr. 391.

On May 31, 2012, Dr. Michael Hartman, a DDS physician, reviewed Plaintiff's medical records and reported symptoms. Tr. 66-76. Based upon his review of the evidence, Dr. Hartman found Plaintiff could perform activities consistent with medium exertion work as defined in the regulations and SSR 83-10. Tr. 73. Specifically, he found Plaintiff could lift and carry up to 50 pounds occasionally, stand and/or walk up to six hours, and sit six hours of an eight-hour workday. Tr. 71. Plaintiff could occasionally climb ladders, ropes and scaffolds. *Id*. She was found to be able to frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. *Id*. Given results of Plaintiff's recent vision testing, Dr. Hartman opined Plaintiff had limited near and far acuity. Tr. 72. He indicated she should avoid even moderate exposure to hazards, including dangerous machinery and unprotected heights. Tr. 72. Specifically related to her arthritis, Dr. Hartman found that while Plaintiff alleged difficulty with walking, the "objective evidence shows that she maintains a normal gait with normal strength and range of motion." Tr. 80.

On July 24, 2012, Plaintiff presented to Dr. Williams with complaints of pain on the right side of her neck and shoulder, as well as arm pain. Tr. 582. Plaintiff reported a history of fibromyalgia, gout, osteoarthritis, and rheumatoid arthritis, which ran in her family. *Id.* Plaintiff also reported some swelling and aching in her hand and knee joints, as well as limited range of motion in her joints. Tr. 584-585. Upon physical examination of her extremities, Dr. Williams noted point tenderness to Plaintiff's left shoulder, and limited range of motion with flexion, extension, and rotation. Tr. 587. He also found Plaintiff's knee swollen, with point tenderness on the medial side of knees. *Id.* Both hands had 1-2+ edema, with more swelling on the right hand. *Id.* Her musculoskeletal exam revealed normal findings. Tr. 587. Overall, Dr. Williams diagnosed Plaintiff with shoulder pain, Type II diabetes, hypertension, and osteoarthritis, but instructed Plaintiff to take Tylenol for the arthritis pain "as needed." Tr. 588.

Dr. Kim Willard's consultative examination on October 9, 2012, revealed that Plaintiff "had a history of arthritis since 2003." Tr. 422-26. Following a physical exam, Dr. Willard assessed Plaintiff with the following:

> On examination of her joints, she has mildly decreased range of motion of her left wrist on palmar flexion, and decreased range of motion of her hips on flexion bilaterally (possibly due to obese abdomen). Patient complains of pain on flexion of her knees, and has mildly decreased range of motion of her knees bilaterally. She has trace, non-pitting edema of her ankles bilaterally, with normal range of motion of her ankles bilaterally, Upper and lower extremity strength is within normal limits bilaterally. I referred patient to Upson Regional Medical Center in Thomaston, Georgia for x-rays of her right hand, and bilateral hips. According to the reports I received, x-rays of her right hand on 10/9/12 showed no acute bony abnormality. The metacarpals and phalanges are within normal limits. X- rays of her hips showed no acute bony abnormality. There is no evidence of subluxation or dislocation. The femoral heads and acetabulum are within normal limits.

Tr. 426.

On October 26, 2012, Dr. Antoinette Thaxton-Brooks, another DDS physician, reviewed Plaintiff's case. Tr. 88-97. After considering the evidence and Plaintiff's medical record, Dr.

Thaxton-Brooks concurred with Dr. Hartman, echoing his findings regarding her limitations from her arthritis, vision, and blood pressure. Tr. 93; 97. Upon physical examination, Dr. Thaxton-Brooks found full range of motion in all joints except Plaintiff's hips. Tr. 95. Although Plaintiff stated that she was "having to use a walker and cane more often to walk," Plaintiff ambulated independently to and from the examination, albeit "with a slight limp." Tr. 95. Dr. Thaxton-Brooks also referenced an x-ray of Plaintiff's hips, which was unremarkable. Tr. 95.

Less than a month later, on November 6, 2012, Dr. Williams saw Plaintiff regarding her complaints of shortness of breath and edema. Tr. 571. Dr. Williams noted Plaintiff's past history of fibromyalgia, gout, osteoarthritis, and rheumatoid arthritis, but upon physical examination, Plaintiff's musculoskeletal examination findings were normal, with some swelling. Tr. 576. Dr. Williams diagnosed Plaintiff with Type II diabetes, hypertension, fatigue, and edema. Tr. 577. Plaintiff presented two days later to the Upson Regional Medical Center for the same complaint. Tr. 641.

On January 28, 2013, Dr. Williams saw Plaintiff regarding her complaints for swollen hands, feet, and knees, as well as swelling on the left side of her face. Tr. 553. A physical exam of her musculoskeletal systems found some osteoarthritic changes, swelling, and tenderness in her hands and feet bilaterally. Tr. 558. Dr. Williams diagnosed Plaintiff with arthritis in her hands and knees, and prescribed clinoril and furosemide to manage her swelling, inflammation, and pain. Tr. 559.

On March 17, 2013, Plaintiff presented to the emergency room with complaints of right shoulder and left flank pain, as well as back pain. Tr. 627. Plaintiff indicated that the pain she felt was similar to "the time she had kidney stones." Tr. 630. An x-ray study consisting of five views of the lumbar spine was administered and found "normal bony alignment," and no evidence of

subluxation or fracture, although mild degenerate changes were present. Tr. 565; 634. Two views of the right shoulder demonstrated no acute bony abnormality, no evidence for subluxation or fracture, no dislocation, and no lytic lesions. Tr. 566; 634. Plaintiff was given one unit of insulin due to her low blood sugar level, and released the same day. Tr. 635.

On April 16, 2013, Dr. Williams consulted Plaintiff regarding her complaints of "burning in her chest and cramping in legs when lying down at night." Tr. 545. Dr. Williams found Plaintiff's extremities to be normal during his physical examination, but later found osteoarthritic changes in her right and left lower extremities upon musculoskeletal examination. Tr. 550-551. Dr. Williams diagnosed Plaintiff with osteoarthritis. Tr. 551.

On August 14, 2013, Plaintiff presented to the emergency room with complaints of chest pain. Tr. 536. Upon admission to the ER, her blood pressure was 192/107. Tr. 538. By the time of Plaintiff's discharge early the next morning, it had lowered to 160/87. Tr. 540. A chest x-ray revealed normal findings, clear lungs, and no acute bony abnormalities. Tr. 542. A CT angiography of the pulmonary arteries revealed no main, segmental, or subsegmental pulmonary emboli. Tr. 543. Plaintiff was referred to Dr. Williams and discharged with narcotic medication and diagnosed for chest pain. Tr. 607.

Dr. Williams saw Plaintiff again on August 19, 2013, regarding her complaints for difficulty breathing, as well as dizziness and swollen hands. Tr. 529. Although Plaintiff complained of "back pain, joint pain, joint swelling, limited range of motion, muscle aches, muscle weakness, and stiffness," (Tr. 532) Dr. Williams' physical examination of Plaintiff's extremities reported normal findings, and negative findings for clubbing, cyanosis, and edema (Tr. 534). Dr. Williams also noted normal findings when examining her musculoskeletal systems. *Id.* Dr. Williams assessed Plaintiff with hypertension, obstructive sleep apnea, lupus,

and Type II diabetes, concluding the examination. Tr. 535. Interestingly, Dr. Williams did not diagnosis Plaintiff with arthritis.

## APPLICABLE STANDARDS

Social Security claimants are "disabled" if they are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled: "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v)).

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether that decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel*, 631 F.3d at 1178. "Substantial evidence" is defined as "more than a scintilla," and as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts may not decide the facts anew, reweigh the evidence, or substitute their

judgment for that of the Commissioner. *Id.* Rather, if the Commissioner's decision is supported by substantial evidence, that decision must be affirmed even if the evidence preponderates against it.

## ANALYSIS

Plaintiff does not challenge the ALJ's determinations at Steps One and Two of the evaluation process. Instead, Plaintiff argues that the Administrative Law Judge's decision did not properly evaluate and assess Plaintiff's case at Steps Three and Four. Plaintiff brings the following issues on appeal:

1. Whether the ALJ properly determined Plaintiff's severe impairments.

2. Whether the ALJ gave appropriate weight to the opinion of Dr. Benjamin Williams.

## **Plaintiff's Severe Impairments**

A severe impairment is one that significantly limits a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 404.1521(a), 416.920(a)(4)(ii), (c). The claimant bears the burden of proving that an impairment is a severe impairment. See *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "A diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment of his ability to work." *Wind v. Barnhart*, 133 Fed. App'x. 684, 690 (11th Cir. 2005) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). The relevant question is the extent to which the impairment limits the ability to work. See *Moore v. Barnhart,* 405 F.3d 1208, 1213, n. 6 (11th Cir. 2005).

Plaintiff argues that the ALJ incorrectly determined Plaintiff's arthritis as non-severe. Doc. 12, p. 4. The ALJ noted that "there are medical records indicating the [Plaintiff] has arthritis, but this appears to be based upon the [Plaintiff]'s subjective report of symptoms." Tr.

16. The ALJ found that the objective medical evidence fails to support an arthritis diagnosis. *Id.* She referenced diagnostic imaging of Plaintiff's knees, hips, and hands which failed to support Plaintiff's diagnosis, as well as a consultative examination in May 2012 that revealed no limitation in manual dexterity. *Id.* In response, Plaintiff argues that the ALJ improperly discounted Dr. Williams' medical opinions regarding Plaintiff's arthritis, and thus the decision is not supported by substantial evidence.

The transcript reflects that Plaintiff's first complaint of arthritis occurred on February 16, 2006, when Plaintiff visited the emergency room for left hand pain and swelling. Tr. 482. The physician's final impression concluded Plaintiff suffered from "gouty arthritis." Tr. 482. During 2007 Plaintiff was admitted to the emergency room for left knee pain and the physician believed Plaintiff to suffer from arthropathy in her left knee. Tr. 437. A year later, Plaintiff saw Dr. Fieseler on March 7, 2008, complaining of sinus pressure and congestion. Tr. 437. Plaintiff's medical history revealed a prior arthritis diagnosis. Tr. 435. Upon physical examination, Dr. Fieseler found bilateral tenderness in her hands, degenerative joint disease in her knees and trace edema. Tr. 436.  Dr. Fieseler diagnosed Plaintiff with, among other things, osteoarthritis. Tr. 436. An x-ray from 2010 of Plaintiff left knee was unremarkable, with normal findings related to Plaintiff's bones, joints, and soft tissues. Tr. 357. Similar findings were made for Plaintiff's right knee. Tr. 356.

On July 24, 2012, Plaintiff presented to Dr. Williams with complaints of pain on the right side of her neck and shoulder, as well as arm pain. Tr. 582. Plaintiff reported a history of fibromyalgia, gout, osteoarthritis, and rheumatoid arthritis, which ran in her family. *Id.* Plaintiff also reported some swelling and aching in her hand and knee joints, as well as limited range of motion in her joints. Tr. 584-585. Upon physical examination of her extremities, Dr. Williams

noted point tenderness to Plaintiff's left shoulder, and limited range of motion with flexion, extension, and rotation. Tr. 587. He also found Plaintiff's knee swollen, with point tenderness on the medial side of knees. *Id.* Both hands had 1-2+ edema, with more swelling on the right hand. *Id.* Her musculoskeletal exam revealed normal findings. Tr. 587. Overall, Dr. Williams diagnosed Plaintiff with shoulder pain, Type II diabetes, hypertension, and osteoarthritis, but instructed Plaintiff to take Tylenol for the arthritis pain "as needed." Tr. 588.

Dr. Kim Willard's consultative examination on October 9, 2012, revealed that Plaintiff "had a history of arthritis since 2003." Tr. 422-26. Although Dr. Willard found limited range of motion in Plaintiff's joints, these findings were based on Plaintiff's complaints of pain, and were not supported by Plaintiff's x-rays. Tr. 427-429. Her opinion was given some weight by the ALJ because of the inconsistencies between Plaintiff's x-rays and her diagnosis.

Less than a month later, on November 6, 2012, Dr. Williams saw Plaintiff regarding her complaints of shortness of breath and edema. Tr. 571. Dr. Williams noted Plaintiff's past history of fibromyalgia, gout, osteoarthritis, and rheumatoid arthritis, but Plaintiff's musculoskeletal examination findings were normal, with some swelling. Tr. 576.  Dr. Williams diagnosed Plaintiff with Type II diabetes, hypertension, fatigue, and edema. Tr. 577.

On January 28, 2013, Dr. Williams saw Plaintiff regarding her complaints of swollen hands, feet, and knees, as well as swelling on the left side of her face. Tr. 553. A physical exam of her musculoskeletal systems found some osteoarthritic changes, swelling, and tenderness in her hands and feet bilaterally. Tr. 558. Dr. Williams diagnosed Plaintiff with arthritis in her hands and knees, and prescribed clinoril and furosemide to manage her swelling, inflammation, and pain. Tr. 559.

On March 17, 2013, Plaintiff presented to the emergency room with complaints of right shoulder and left flank pain, as well as back pain. Tr. 627. Plaintiff indicated that the pain she felt was similar to "the time she had kidney stones." Tr. 630. An x-ray study consisting of five views of the lumbar spine was administered and found "normal bony alignment," and no evidence of subluxation or facture, although mild degenerate changes were present. Tr. 565; 634. Two views of the right shoulder demonstrated no acute bony abnormality, no evidence for subluxation or fracture, no dislocation, and no lytic lesions. Tr. 566; 634.

On April 17, 2013, Dr. Williams saw Plaintiff regarding her complaints of "burning in her chest and cramping in legs when lying down at night." Tr. 545. Dr. Williams found Plaintiff's extremities to be normal during his physical examination, but later found osteoarthritic changes in her right and left lower extremities upon musculoskeletal examination. Tr. 550-551. Dr. Williams diagnosed Plaintiff with osteoarthritis. Tr. 551.

Dr. Williams saw Plaintiff again on August 20, 2013, regarding her complaints for difficulty breathing, as well as dizziness and swollen hands. Tr.  529. Although Plaintiff complained of "back pain, joint pain, joint swelling, limited range of motion, muscle aches, muscle weakness, and stiffness," (Tr. 532) Dr. Williams' physical examination of Plaintiff's extremities reported normal findings, and negative findings for clubbing, cyanosis, and edema (Tr. 534). Dr. Williams also noted normal findings when examining her musculoskeletal systems. *Id.* Dr. Williams assessed Plaintiff with hypertension, obstructive sleep apnea, lupus, and Type II diabetes, concluding the examination. Tr. 535. Dr. Williams did not list arthritis as a diagnosis.

This record confirms that substantial evidence supports the ALJ's finding that Plaintiff's diagnoses for arthritis were based on subjective complaints instead of objective imaging and

examination. Dr. Williams never evaluated Plaintiff's arthritis with the benefit of diagnostic imaging, and other x-rays do not support a finding of more than mild arthritis. Further, substantial evidence supports the ALJ's finding that Plaintiff's subjective complaints are not entirely credible. Plaintiff's symptoms from her arthritis result primarily in pain, as exhibited by visits to the emergency room and to Dr. Williams for complaints related to pain, yet both Plaintiff and her attorney testified at the hearing that despite her pain, she works part-time, "about eight hours per week," at the Chili's in Thomaston, where she rolls silverware. Tr. 34; 43. Plaintiff also indicated that regardless of her pain, she is able to drive. Tr. 40. The ALJ noted that Plaintiff was able to attend appointments, wash laundry, provide for her personal care without problems, prepare simple meals, drive motor vehicles, shop, listen to music, watch television programs, and work part-time. Tr. 19; 69. Accordingly substantial evidence supports the ALJ's finding Plaintiff's arthritis non-severe.

Notwithstanding the finding that Plaintiff's arthritis was non-severe, impairment due to arthritis was accounted for in the ALJ's RFC determination. When determining a claimant's RFC, the ALJ is required to consider all impairments, including both severe and non-severe impairments. 20 C .F.R. § 404.1545(a)(2). In this case, the ALJ considered all of Plaintiff's symptoms, including those caused by non-severe impairments. The ALJ concluded her analysis by noting that even though the objective medical evidence fails to confirm a medically determinable impairment of arthritis, Plaintiff's allegations of symptoms would be accommodated by Plaintiff's RFC. *Id*.

Because the medical evidence provides substantial evidence that Plaintiff's arthritis was not a severe impairment, and because it was accounted for in the ALJ's RFC determination, this ground for reversal of the ALJ's decision is due to be denied.

### Plaintiff's RFC Determination

A Plaintiff's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). The determination of the RFC is an administrative assessment based on all the evidence of how Plaintiff's impairments and related symptoms affect her ability to perform work-related activities. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The regulations state that the final responsibility for assessing a claimant's RFC rests with the ALJ, based on all the evidence in the record. See 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a)(3), 404.1546(c), 416.927(e)(2), 416.945(a)(3), 416.946(c). Relevant evidence includes medical reports from treating and examining sources, medical assessments, and descriptions and observations of a claimant's limitations by the claimant, family, neighbors, friends, or other persons. See 20 C.F.R. §§ 404.1545(a)(3), 416.945(a) (3).

When deciding the evidence: "the testimony of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary." *Crawford v. Commissioner of Soc. Sec*., 363 F.3d 1155, 1159 (11th Cir. 2004) (citations and internal quotations omitted). The ALJ may discount the treating physician's report where it is not accompanied by objective medical evidence, is wholly conclusory, or is contradicted by the physician's own record or other objective medical evidence. *Id*.; *see also Green v. Social Sec. Admin*., 223 Fed. App'x. 915, 922–23 (11th Cir. 2007)  (ALJ had good cause to devalue a treating physician's opinion where it was inconsistent with the objective medical evidence, as well as plaintiff's testimony). The Eleventh Circuit has enumerated factors the ALJ must consider when declined to give the treating physician's opinion controlling weight:

> When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the: (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence and explanation supporting

the opinion; (4) consistency with the record as a whole; (5) specialization in the pertinent medical issues; and (6) other factors that tend to support or contradict the opinion.

*Weekley v. Commissioner of Soc. Sec.*, 486 Fed. App'x. 806, 808 (11th Cir. 2012) (citing 20 C.F.R. § 404.1527(c)). Further, when an ALJ articulates specific reasons for declining to give a treating physician's opinion controlling weight, and the reasons are supported by substantial evidence, there is no reversible error. *See Forrester v. Commissioner of Social Sec.*, 455 Fed. App'x. 899, 902 (11th Cir. 2012) ("We have held that an ALJ does not need to give a treating physician's opinion considerable weight if evidence of the claimant's daily activities contradicts the opinion."). Indeed, an ALJ "may reject any medical opinion, if the evidence supports a contrary finding." *Id.* at 901.

Further, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants ... may be entitled to greater weight than the opinions of treating or examining sources." SSR 96–6p. The weight given to a non-examining consultant's opinion depends on "the extent to which it is supported by clinical findings and is consistent with other evidence." *Jarrett v. Comm'r of Soc. Sec.*, 422 Fed. App'x. 869, 873 (11th Cir. 2011); see also *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004).

The Court must also be aware that some opinions, such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, ... but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis v.*

*Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. See, e.g., 20 C.F.R. § 404.1546(c).

In formulating Plaintiff's RFC, the ALJ analyzed the record as a whole, including the records of Plaintiff's treating physician Dr. Benjamin Williams, consultative physician Dr. Bush, consultative physician Dr. Willard, and the State Agency reviewers, along with the testimony of Plaintiff herself. Tr. 18-21. The ALJ considered Plaintiff's testimony, but did not find it entirely credible. Tr. 19. The ALJ then turned to the medical record and accorded significant weight to the report of Dr. Bush, some weight to Dr. Willard's report, and little weight to the opinions of Dr. Williams. Tr. 18-21. Plaintiff's arguments address the ALJ's assessment of the opinion of her treating physician, Dr. Williams. Doc. 12, pp. 4-7.

The ALJ gave Dr. Williams' opinions of Plaintiff's RFC limitations "little weight" in her determination of Plaintiff's RFC. Tr. 21. Dr. Williams' assessment of Plaintiff's limitations is set forth in his responses to a disability questionnaire and Medical Source Statement of Ability to do Work-related Activities prepared on November 22, 2012. Tr. 523-528. On the questionnaire, Dr. Williams lists Plaintiff's impairments as diabetes, hypertension, and "reported Arthritis." Tr. 523. He states that because of arthritis in her hands, Plaintiff is able to lift less than five pounds occasionally and zero pounds frequently. Tr. 525.

The ALJ showed good cause for giving less weight to the conclusions in the questionnaire as to Plaintiff's physical limitations. As to Plaintiff's "reported" arthritis, the ALJ noted that "the objective medical evidence and diagnostic imagining fail to confirm such a diagnosis." Tr. 21. The ALJ mentioned that x-rays of Plaintiff's knees, hips, and hands Did not support a diagnosis of debilitating arthritis. Tr. 16. Further, the ALJ found the limitations

described in Dr. Williams questionnaire responses as inconsistent with the record as a whole, including other medical opinions and Plaintiff's activities of daily living—specifically her continued employment. Tr. 21. The ALJ noted that while Dr. Williams placed significant limitations on Plaintiff due to her arthritis, in Dr. Willard's May 2012 consultative examination, Plaintiff was found to demonstrate no limitation in manual dexterity. Tr. 16; 426. Dr. Williams also found no limitations in Plaintiff's vision, despite her diagnosis for diabetic retinopathy. Further, the ALJ noted that Plaintiff was able to attend appointments, wash laundry, provide for her personal care without problems, prepare simple meals, drive motor vehicles, shop, listen to music, watch television programs, and work part-time. Tr. 19; 69.

Dr. Williams' own records do not indicate that arthritis was a significant concern. Records from a regular office visit on August 20, 2013, note a history of rheumatoid and osteoarthritis (Tr. 529), but do not indicate a current diagnosis of arthritis. Tr. 535. Instead, the records indicate concerns focused on hypertension, diabetes, sleep apnea, and lupus. Tr. 535.

The limitations noted in Dr. Williams' November 2012 questionnaire responses are not supported by other medical evidence in the record. X-ray imaging of Plaintiff's hands, knees, and shoulders revealed no abnormalities or indications of degeneration. See Tr. 356-357; 427-429; 566; 634. Dr. Antoinette Thaxton-Brooks noted that Plaintiff walked with a normal gait and showed muscle strength and tone within normal limits. Tr. 93. Another reviewing physician, Dr. Hartman, found that while Plaintiff alleged difficulty with walking and arthritis, the "objective evidence shows that she maintains a normal gait with normal strength and range of motion." Tr. 80. Similarly, Dr. Bush found no indication of swelling or warmth in Plaintiff's hands and noted full range of motion in all joints and normal muscle strength. Tr. 390. Although Dr. Willard found limited range of motion in Plaintiff's joints, consistent with the opinions of Dr. Williams,

those findings were based on Plaintiff's complaints of pain, and were not supported by Plaintiff's x-rays. Tr. 427-429. Dr. Hartman found that Plaintiff was found to be able to frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, while Dr. Williams' restricted Plaintiff to "never" climb, balance, kneel, crouch, or crawl.  Compare Tr. 71 with Tr. 526. Given the results of Plaintiff's vision testing, Dr. Hartman opined Plaintiff had limited near and far acuity. Tr. 72. Dr. Williams never indicates how his findings of Plaintiff's vision limitations are to be reconciled with her noted vision impairment. Thus, the ALJ's decision to provide "little weight" to Dr. Williams' November 2012 disability assessment is supported by substantial evidence, and the Court should uphold the ALJ's determination on appeal.

## CONCLUSION

After a careful review of the record, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED.** Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, WITHIN FOURTEEN (14) DAYS after being served with a copy thereof. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 30th day of June, 2016.

s/ Charles H. Weigle_____
Charles H. Weigle
United States Magistrate Judge